**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE NINTH CIRCUIT**

| | |
|---|---|
| STATE OF HAWAI‘I,<br>Petitioner,<br><br>v.<br><br>UNITED STATES ENVIRONMENTAL PROTECTION AGENCY,<br>Respondent. | No. 26-4688 |

**HAWAIIAN ELECTRIC COMPANY, INC.; HAWAI‘I ELECTRIC LIGHT COMPANY, INC.; AND MAUI ELECTRIC COMPANY, LIMITED’S MOTION FOR LEAVE TO INTERVENE AS RESPONDENTS**

Pursuant to Rule 15(d) of the Federal Rules of Appellate Procedure, Hawaiian Electric Company, Inc.; Hawai‘i Electric Light Company, Inc.; and Maui Electric Company, Limited (collectively, "Hawaiian Electric"[1] or "the Company") respectfully move for leave to intervene in support of Respondent in the above-captioned matter, Case No. 26-4688. Petitioner in this case is the State of Hawai‘i, who challenges Respondent United States Environmental Protection Agency's ("EPA" or "the Agency") final rule entitled, "Partial Approval and Partial Disapproval of Air Quality Implementation Plans; Hawaii; Regional Haze State Implementation Plan for the Second Implementation Period," published at 91 Fed. Reg. 31,941 (May 29, 2026) ("Partial SIP Disapproval"). EPA promulgated the rule pursuant to Section 169A of the Clean Air Act, 42 U.S.C. § 7491, to disapprove (in part) the State of Hawai‘i's 2024 Regional Haze State Implementation Plan ("2024 Regional Haze SIP") addressing regional haze requirements for the second planning period (2018-2028).

Hawaiian Electric seeks to intervene to protect its interests in EPA's partial disapproval of Hawai‘i's 2024 Regional Haze SIP. Hawaiian Electric owns and operates several electric generating facilities on Maui and Hawai‘i islands that are required to shut down under the 2024 Regional Haze SIP that is the subject of EPA's

[1] Hawai‘i Electric Light Company, Inc. and Maui Electric Company, Limited are subsidiaries of Hawaiian Electric Company Inc. and all are approved to do business under the trade name Hawaiian Electric.

rulemaking that Petitioner challenges in this proceeding. The result of this action could impact Hawaiian Electric's ability to operate these facilities at a time when they are critical to sustain necessary grid reliability. Hawaiian Electric therefore has direct and substantial interests that could be impaired by this action. Hawaiian Electric's individual interests cannot be adequately represented by any of the parties in this action. This motion is timely filed within thirty days of the filing of a petition for review in accordance with Federal Rule of Appellate Procedure 15(d). Accordingly, Hawaiian Electric should be granted leave to intervene in this case to support denial of the petition for review.

Hawaiian Electric has conferred with counsel for Petitioner State of Hawai‘i, who authorized Hawaiian Electric to represent that Petitioner does not oppose this Motion. Hawaiian Electric has also conferred with counsel for EPA, who authorized Hawaiian Electric to represent that Respondent reserves its position until reviewing this Motion.

## I. BACKGROUND

### A. Hawaiian Electric's Operations

Hawaiian Electric is the primary electric utility in the State of Hawai‘i and serves 95 percent of Hawai‘i's 1.4 million residents on the islands of O‘ahu, Maui, Hawai‘i, Lāna‘i and Moloka‘i. *See* Hawaiian Electric Comments on Hawai‘i Regional Haze SIP Disapproval, EPA-R09-OAR-2025-0152-0019 (Apr. 20, 2026)

("2026 HECO Comments") at 1. Hawaiian Electric owns and operates the Kanoelehua-Hill Power Plant and Puna Power Plant on Hawai‘i Island and the Kahului Power Plant and Maalaea Power Plant on Maui Island, which represent a total of 321.1 megawatts ("MW") of firm capacity. *See id.*; *see also* Declaration of Karin Kimura ("Kimura Decl.") at ¶ 5.

Hawaiian Electric is committed to empowering its customers and communities with safe, reliable, resilient, affordable, clean energy. In 2015, Hawai‘i became the first state to direct its utilities to generate 100% of their electricity from renewable energy sources by 2045. Kimura Decl. at ¶ 6. In response to this state-wide directive, Hawaiian Electric has undertaken an extensive resource planning process to expand its renewable energy generation capacity and reduce electricity-sector greenhouse gas emissions in 2030 by 70% compared to 2005 levels. *Id.* Since 2010, Hawaiian Electric has nearly tripled its renewable energy generation capacity. *Id.*

In 2023, Hawaiian Electric prepared and submitted to the State of Hawai‘i Public Utilities Commission ("Commission") an Integrated Grid Plan ("IGP") outlining a pathway towards decarbonizing the electric grid consistent with the State's goals. *Id.* at ¶ 7. As part of this plan, Hawaiian Electric prepared a timeline for adding renewable resources, retiring or deactivating fossil fuel-based generation, and reducing carbon emissions. This timeline targeted the retirement of two boilers

at Kanoelehua-Hill, four boilers at Kahului, and four diesel engine generators at Maalaea in 2027, as well as a further nine generators at Maalaea in 2030, and planned for the addition of 2,404 MW of renewable generating capacity by 2030 to replace these retiring resources, as required by conditions in its Title V operating permits for these facilities. *See id.* ¶¶ 7-8. Consistent with these planned replacement projects, Hawaiian Electric selected 16 renewable energy projects in December 2023 and January 2024 and began negotiations to produce long-term contracts for approximately 517 MW of variable generation, 694 MW of firm generation, and 2.1 gigawatt-hours ("GWh") of storage. *Id.* at ¶ 9. In a 2026 update to the IGP, Hawaiian Electric revised its retirement timeline for fossil fuel-based generation resources based on revised requirements in the Title V permits for these facilities. *Id.* at ¶ 10.

**B. The 2024 Hawai‘i Regional Haze SIP**

Hawai‘i prepared a SIP to satisfy its regional haze obligations under CAA sections 169A and 169B (42 U.S.C. §§ 7491 and 7492) and the Regional Haze Rule (40 C.F.R. § 51.308) for the second implementation period (2018-2028). Hawai‘i initially submitted the SIP to EPA on August 12, 2022, but subsequently withdrew this submission and submitted a revised SIP on August 2, 2024. *See* 91 Fed. Reg. at 31,941.

As part of its long-term strategy for reasonable progress, the 2024 Regional Haze SIP required the closure of six units owned and operated by Hawaiian Electric

and required either closure or installation of costly controls at another five units, representing 183 MW of total capacity. These closure requirements include two boilers at Kanoelehua-Hill Power Plant by December 31, 2028, and four boilers at Kahului Power Plant by December 31, 2028. The 2024 Regional Haze SIP also required either the installation of selective catalytic reduction ("SCR") controls or closure of five diesel engine generators at Maalaea Power Plant between December 31, 2030, and December 31, 2037. *See* Proposed Rule, Partial Approval and Partial Disapproval of Air Quality Implementation Plans; Hawaii; Regional Haze State Implementation Plan for the Second Implementation Period, 91 Fed. Reg. 7204, 7216 (Feb. 17, 2026).

Hawaiian Electric initially agreed in 2021 to shutdown dates for these units as Hawai'i was developing the 2022 Regional Haze SIP submittal. Kimura Decl. at ¶13. At that time, Hawaiian Electric determined that accepting enforceable shutdowns would be in the best interest of its rate payers and the most feasible, cost-effective compliance pathway based on available information at that time regarding the projected availability of planned replacement generation capacity. *See* 2026 HECO Comments at 3–4. This determination took into account the significant cost of controls in Hawaiʻi compounded by the advanced age of the units at issue, as well as existing retirement plans as replacement generation capacity was anticipated to come online. Kimura Decl. at ¶13. As a result, the 2022 Regional Haze SIP submittal

incorporated 2027 shutdown dates for the boilers at Kahului and Kanoelehua-Hill. *See* Hawaiʻi State Department of Health, Comments on EPA Proposed Partial Approval and Partial Disapproval of Hawaiʻi's Regional Haze State Implementation Plan (SIP) for the Second Planning Period (Apr. 17, 2026), EPA-R09-OAR-2025-0152-0018 ("HDOH Comment Letter") at 6–7.

After Hawaiian Electric made this agreement, it continued to update the Hawaiʻi Department of Health ("DOH" or "the Department") about developments related to the availability of replacement power that impacted the feasibility of the shutdown dates for the boilers. On July 22, 2022, prior to Hawai'i's submittal of the SIP to EPA, Hawaiian Electric submitted a letter to the DOH requesting that the 2027 deadlines be extended to 2028 in light of recent supply chain issues delaying anticipated operation dates for renewable projects. Kimura Decl. at ¶ 20. The Company met with DOH about this request on August 5, 2022, and reiterated the request in writing on August 11, 2022 and December 2, 2022, noting the continually evolving timing of anticipated renewal projects due to supply chain issues and delays. *Id*.

In May 2024, as DOH was developing the 2024 Regional Haze SIP submittal that included the extension of shutdown dates from 2027 to 2028, Hawaiian Electric informed the State that significant new developments related to the availability of replacement generation capacity could potentially impede Hawaiian Electric's

ability to retire its units by 2028. In particular, expected projects had been cancelled and the relative pace at which new renewable generation was coming online had significantly slowed, which could make unit retirements infeasible on the timelines anticipated by the 2024 Regional Haze SIP. Kimura Decl. at ¶ 21. Nevertheless, the State submitted the 2024 Regional Haze SIP to EPA in August without further adjusting these deadlines. *Id.*

In October of 2024, after the 2024 Regional Haze SIP was submitted, but prior to any action by EPA, Hawaiian Electric formally requested that the State revise the SIP to allow for a contingency period extending past 2028 to account for delays in renewable projects that could result in generation shortfalls or reliability issues leading to rolling outages. *See* Kimura Decl. at ¶ 22. The State responded in November 2024 that it was unable to revise the SIP due to the time required to prepare an updated analysis and for EPA to complete its review, but that it understood the need to assure reliability, and encouraged further discussion as well as exploration of alternative contingency measures. *Id.*

In 2025, Hawaiian Electric continued its outreach to both DOH and EPA about worsening project delays significantly impacting the availability of new capacity to replace retiring units. Hawaiian Electric informed both DOH and EPA of these developments, emphasizing that, given these changing circumstances, shutting down four major units on Maui and two units on Hawaiʻi Island in 2028, as

well as subsequent shutdowns of additional units on Maui between 2030 and 2037, could interfere with long-term resource adequacy and grid reliability for both Maui and the Hawai‘i Island without the adjusted timeframe that Hawaiian Electric requested as a contingency. *See id*. at ¶ 23–26.

Hawaiian Electric met with the Hawai‘i Department of Health on June 27, 2025, requesting that the Department prepare and submit a SIP supplement to reflect these recent developments and revise the control requirements for Hawaiian Electric's units. *See* Kimura Decl. at ¶ 24; *see also* HDOH Comment Letter at 9. Subsequently, Hawaiian Electric submitted a letter to the Department on July 3, 2025, reiterating its request for a SIP supplement and providing further information related to "the extreme effects that the current SIP requirements could have on system reliability on Hawai‘i Island and Maui." *See* Kimura Decl. at ¶ 24; HDOH Comment Letter, Attachment M. In particular, Hawaiian Electric explained that "significant challenges have arisen for numerous renewable projects on which the Company was relying to replace generation that must be retired under the current SIP, as well as to ensure grid reliability during the implementation of SIP-mandated controls." *See* HDOH Comment Letter, Attachment M at 1-2.

After these discussions with the State, Hawaiian Electric met with staff from EPA's Office of Air and Radiation on July 9, 2025, and with EPA Region IX on August 25, 2025, explaining its concern that the unit retirement dates in Hawai‘i's

2024 Regional Haze SIP might not allow enough time to successfully procure and place in service replacement projects needed to maintain grid reliability and integrity. Kimura Decl. at ¶ 25. In a subsequent letter submitted to EPA on August 29, 2025 (which also was provided to the State), Hawaiian Electric provided additional information regarding anticipated reliability issues, explaining that "retirement of the generating units as required by the SIP deadlines will create higher probability of energy reserve margin shortfalls that increase risk to reliability," which would have "dire" consequences across the State, since "each island must be entirely self-sufficient and cannot rely on power by wire transmission from other jurisdictions." *See id.* at ¶ 26; HDOH Comment Letter, Attachment O at 3. Hawaiian Electric also noted that "115 MW of planned generation have been cancelled on Hawai'i Island," and that, as a result, "grid reliability will be at risk in 2029 following the retirement of the Kanoelehua-Hill boilers." HDOH Comment Letter, Attachment O at 3.

On February 17, 2026, EPA proposed to partially approve and partially disapprove Hawai'i's 2024 Regional Haze SIP. 91 Fed. Reg. at 7204. Hawaiian Electric submitted comments in April 2026 expressing support for the proposal, explaining that "intervening events, including a significant increase in the costs of controls as well as changes to the schedule for bringing additional sources online,

have fundamentally changed the basis for the State's analysis, and the State's control determinations are no longer reasonable." *See* 2026 HECO Comments at 11.

On May 29, 2026, EPA disapproved portions of Hawai'i's 2024 Regional Haze SIP, including Hawai'i's long-term strategy for regional haze management and reasonable progress goals, finding that the SIP "failed to provide necessary assurances that unconsented enforceable source closures would not be prohibited by State or Federal law, as required by CAA section 110(a)(2)(E)." 91 Fed. Reg. at 31,942.

The State of Hawai'i filed a petition for review of the Partial SIP Disapproval on July 22, 2026, No. 26-4688. National Parks Conservation Association, Natural Resources Defense Council, Sierra Club, and Coalition to Protect America's National Parks filed a separate petition for review of the Partial SIP Disapproval on the same date in Case No. 26-4704. Hawaiian Electric has filed a separate motion to intervene in Case No. 26-4704.

## II. ARGUMENT

### A. Hawaiian Electric is Entitled to Intervention as a Matter of Right.

Pursuant to Fed. R. App. P. 15(d), a motion for leave to intervene "must be filed within 30 days after the petition for review is filed and must contain a concise statement of the interest of the moving party and the grounds for intervention." FRAP 15(d). Federal courts of appeals grant intervention where an intervenor has a direct and substantial interest in the subject matter of the litigation. *See Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 817-18 (9th Cir. 2001); *Yakima Valley Cablevision, Inc. v. FCC*, 794 F.2d 737, 744-45 (D.C. Cir. 1986).

Although the federal appellate court rules have not expressly incorporated the specific criteria for intervention set forth in the federal district court rules, federal appellate courts, including this Court, look to Federal Rule of Civil Procedure ("FRCP") 24 for guidance in determining whether intervention is appropriate in petition for review proceedings that originate in those courts. *See, e.g.*, *Berg*, 268 F.3d at 817 (holding that where "no federal statute confers an unconditional right to intervene, [FRCP] Rule 24(a) provides for intervention as of right"); *Sierra Club, Inc. v. EPA*, 358 F.3d 516, 517-18 (7th Cir. 2004) ("Rule 15(d) does not provide standards for intervention, so appellate courts have turned to the rules governing intervention in the district courts under Fed.R.Civ.P. 24.") (citing *Int'l Union v. Scofield*, 382 U.S. 205, 216-217 & n.10 (1965)). The requirements for intervention

of right under FRCP 24(a)(2) are that: (1) the motion for leave to intervene is timely filed; (2) the intervenor-applicant has a significant protectable interest relating to the subject of the action; (3) disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect that interest; and (4) existing parties may not adequately represent the applicant's interest. *See, e.g.*, *Chamness v. Bowen*, 722 F.3d 1110, 1121 (9th Cir. 2013) (quoting *United States v. Alisal Water Corp.*, 370 F.3d 915, 919 (9th Cir. 2004). Applying this framework, Hawaiian Electric should be granted leave to intervene as a matter of right.

This Court repeatedly has emphasized that, "[i]n general, we construe Rule 24(a) liberally in favor of potential intervenors." *Berg*, 268 F.3d at 818 (citation omitted); *see also, e.g.*, *Prete v. Bradbury*, 438 F.3d 949, 954 (9th Cir. 2006); *Arakaki v. Cayetano*, 324 F.3d 1078, 1083 (9th Cir. 2003). Consistent with this policy, this Court emphasizes "practical and equitable considerations" and construes requirements "broadly." *Wilderness Soc. v. U.S. Forest Serv.*, 630 F.3d 1173, 1179 (9th Cir. 2011) (internal quotations omitted).

**1. Hawaiian Electric's Motion is Timely.**

As described above, under Fed. R. App. P. 15(d), a motion to intervene must be filed within 30 days of the petition for review. The State of Hawai‘i filed its petition for review on July 22, 2026, which makes the deadline for a motion to intervene August 21, 2026. This Motion therefore is timely. Moreover, Hawaiian

Electric's intervention at the outset of this litigation will not delay the proceedings or prejudice any party's ability to participate in the litigation, as no substantive proceedings have occurred. *See Citizens for Balanced Use v. Mont. Wilderness Ass'n*, 647 F.3d 893, 897 (9th Cir. 2011) (finding that absence of disruption and lack of prejudice are "traditional features of a timely motion" to intervene).

**2. Hawaiian Electric Has a Significant Protectable Interest Relating to the Subject of the Action.**

The interest requirement is met where "the interest is protectable under some law" and "there is a relationship between the legally protected interest and the claims at issue." *Id.* The test is a "practical, threshold inquiry"; there is no need to demonstrate a "specific legal or equitable interest," and the relationship requirement is met where "resolution of the [Petitioner's] claims actually will affect the applicant [for intervention]." *S. Cal. Edison Co. v. Lynch*, 307 F.3d 794, 803 (9th Cir. 2002), *modified by*, 307 F.3d 943 (9th Cir. 2002), *answer to certified question conformed to*, 353 F.3d 648 (9th Cir. 2002) (citations and internal quotations omitted). A protectable interest is at stake where the Petitioner's claims implicate regulation of the movant's property or the movant has a concrete financial interest relating to the subject matter of the action. *See Alisal Water Corp.*, 370 F.3d at 919-20 (finding that intervention is warranted where there is a concrete economic interest at stake) (citations omitted).

Here, unquestionably, Hawaiian Electric has a substantial interest in the subject of these challenges. Hawaiian Electric has a concrete financial interest in the continued operation of its power plants and its ability to provide sufficient generating capacity to meet customer demand. *See Id*. Hawai‘i's 2024 Regional Haze SIP would require Hawaiian Electric to close 11 units between 2028 and 2037. As Hawaiian Electric explained in correspondence sent to Hawai‘i and EPA, and in related meetings, these source closures deadlines are no longer feasible, due to the serious risk of grid reliability issues and increased costs for the Company's ratepayers. The possibility that Hawaiian Electric may be required to close its units before adequate replacement generation is in place, risking grid reliability and resource adequacy, is a sufficient interest warranting intervention.

Petitioner challenges the legality of EPA's disapproval of Hawai‘i's 2024 Regional Haze SIP, including the Agency's disapproval of source closure requirements for Hawaiian Electric's Kanoelehua-Hill, Kahului, and Maalaea facilities. As the owner and operator of the specific units at issue in this Petition, Hawaiian Electric has concrete financial interests that would be directly affected by a decision in favor of Petitioner.

### 3. Disposition of This Case May, as a Practical Matter, Impair or Impede Hawaiian Electric's Ability to Protect its Interest in the Subject Matter of This Litigation.

This Court has generally found that the "impairment" requirement is met where the intervenor-applicant has a substantial, protectable interest in the case. *See, e.g.*, *Citizens for Balanced Use*, 647 F.3d at 898; *California ex rel. Lockyer v. United States*, 450 F.3d 436, 442 (9th Cir. 2006). As this Court has explained, where an intervenor has a significant protectable interest, the Court has had "little difficulty concluding that the disposition of this case may, as a practical matter, affect it." *Lockyer*, 450 F.3d at 442; *see also United States v. Aerojet Gen. Corp.*, 606 F.3d 1142, 1152 (9th Cir. 2010).

Here, Petitioner's challenge to EPA's disapproval of the 2024 Regional Haze SIP threatens to reopen EPA's action and could lead to approval of infeasible source closure deadlines under the 2024 Regional Haze SIP, forcing Hawaiian Electric to prematurely close 11 units. That could "substantially affect" Hawaiian Electric, by imposing additional financial and operating burdens on the Company as it fulfills its duty to serve its customers. If Hawaiian Electric is not allowed to intervene, it will be unable to protect its interests in the continued operation of these units until a more

appropriate closure date, the maintenance of grid reliability, and the provision of reasonable electricity prices for its rate payers.[2]

#### 4. The Existing Parties do not Adequately Represent Hawaiian Electric's Interest.

As this Court has emphasized, "[t]he burden of showing inadequacy of representation is 'minimal' and satisfied if the applicant can demonstrate that representation of its interests '*may be*' inadequate." *Citizens for Balanced Use*, 647 F.3d at 898 (emphasis added) (citation omitted). In evaluating this requirement, this Court considers whether an existing party "will undoubtedly make all of the intervenor's arguments" and "is capable of and willing to make such arguments," and whether the applicant could provide "a necessary element to the proceedings" that otherwise "would be neglected." *Prete*, 438 F.3d at 956. The most important factor is "'how the [applicant's] interest compares with the interests of existing parties.'" *Id.* (quoting *Arakaki*, 324 F.3d at 1086).

Here, Petitioner does not and cannot represent Hawaiian Electric's interest because these interests are directly adverse to, and in conflict with one another.

[2] Any hypothetical prospective rulemaking does not obviate the need for intervention or mitigate the risk that this litigation will impair the Company's interests. *See WildEarth Guardians v. Nat'l Park Serv.*, 604 F.3d 1192, 1199 (10th Cir. 2010) ("'[T]he mere availability of alternative forums is not sufficient to justify denial of a motion to intervene' because 'at most,' participating in a new proceeding 'would not provide the level of protection to the intervenors' interests that the current plan offers.'" (quoting *Utah Ass'n of Counties v. Clinton*, 255 F.3d 1246, 1254 (10th Cir.2001)).

Petitioner challenges EPA's Partial SIP Disapproval, while Hawaiian Electric seeks to support this rule against Petitioners' challenges.

Nor can EPA adequately represent Hawaiian Electric's interests. Hawaiian Electric has a unique and separate interest from EPA in the outcome of this matter. Although both EPA and Hawaiian Electric oppose Petitioner's claims, as this Court has recognized, "the government's representation of the public interest may not be 'identical to the individual parochial interest' of a particular group just because 'both entities occupy the same posture in the litigation.'" *Citizens for Balanced Use*, 647 F.3d at 899 (quoting *WildEarth Guardians v. U.S. Forest Serv.*, 573 F.3d 992, 996 (10th Cir. 2009). While EPA has an interest in this Court's affirmance of its rule, EPA is focused on a broad "representation of the general public interest," not the "narrower interest" of certain businesses. *Forest Conservation Council v. U.S. Forest Service*, 66 F.3d 1489, 1499 (9th Cir. 1995) (noting that a government agency was "required to represent a broader view" than narrower, focused interests of intervenors). EPA does not suffer any regulatory uncertainty or pecuniary harm from an adverse outcome. Unlike EPA, Hawaiian Electric has a duty to provide reliable electricity to its customers at a reasonable cost and must make operational decisions and investments to comply with the 2024 Regional Haze SIP. In opposing Petitioner's challenge to the rule, EPA might adversely affect Hawaiian Electric's ownership and operational interests in its facilities. Further, if Petitioner obtains a

judgment in its favor in this case, EPA may decide not to seek rehearing or review of the decision, whereas the Company—motivated by its substantial and direct financial interest, which EPA lacks—may decide to do so.

Moreover, Hawaiian Electric is uniquely situated because it has direct, in-depth knowledge of the electricity demands of its customers, the capacity of the electric generating units it operates, the technical and cost implications of the closure of its units, and ongoing procurement of replacement generation capacity. While EPA is responsible for air quality regulation, it does not, as a practical matter, share Hawaiian Electric's specific knowledge of electricity demand and generation development in Hawai'i. *See Nw. Env't Advocs. v. U.S. Dep't of Com.*, 769 F. App'x 511, 512 (9th Cir. 2019) (granting intervention as of right in part where proposed intervenor had "specialized expertise"). EPA therefore cannot adequately represent Hawaiian Electric's interests in this matter.

For the foregoing reasons, Hawaiian Electric's intervention in this case is warranted.

**B. In the Alternative, the Court Should Grant Hawaiian Electric Permission to Intervene.**

As established above, Hawaiian Electric is entitled to intervene as a matter of right. Alternatively, Hawaiian Electric also qualifies for permissive intervention. Federal Rule of Civil Procedure 24(b)(1) provides that "on timely motion, the court may permit anyone to intervene who … has a claim or defense that shares with the

main action a common question of law or fact." This Court may grant permissive intervention where the applicant for intervention shows that "the motion is timely" and "the applicant's claim or defense, and the main action, have a question of law or a question of fact in common." *Nw. Forest Res. Council v. Glickman*, 82 F.3d 825, 839 (9th Cir. 1996).[3]

*First*, as discussed above, this Motion is timely because it was filed within the 30-day window prescribed by Fed. R. App. P. 15(d), and because Hawaiian Electric's intervention will neither delay the proceedings nor prejudice any party's ability to participate.

*Second*, Hawaiian Electric possesses legally protectable interests in the continued operation of its generating units and, to defend those interests, it will present defenses that raise questions of law and fact in common with those raised by this action. The central legal question in this proceeding is whether EPA's partial disapproval of Hawai'i's 2024 Regional Haze SIP was lawful under the Clean Air Act, and that is precisely the question on which Hawaiian Electric's interests depend.

---

[3] Although this Court at times requires a showing of independent grounds for jurisdiction, that requirement is inapplicable here, as the Ninth Circuit has held that "the independent jurisdictional grounds requirement does not apply to proposed intervenors in federal-question cases when the proposed intervenor is not raising new claims." *Freedom from Religion Found., Inc. v. Geithner*, 644 F.3d 836, 844 (9th Cir. 2011). Because Hawaiian Electric seeks to intervene to defend the Partial SIP Disapproval rather than to raise any new claims, independent grounds for jurisdiction need not be demonstrated.

Accordingly, the Court should grant Hawaiian Electric permission to intervene.

## CONCLUSION

For the foregoing reasons, this Court should grant Hawaiian Electric's motion to intervene as a respondent in this action.

Respectfully submitted August 21, 2026.

By: */s/ Allison Watkins Mallick*

Allison Watkins Mallick
BAKER BOTTS L.L.P.
101 California Street, Suite 3200
San Francisco, CA 94111
Telephone: (415) 291-6269
Email: allison.mallick@bakerbotts.com

Debra J. Jezouit
BAKER BOTTS L.L.P.
700 K Street N.W.
Washington, D.C. 20001
Telephone: (202) 639-7728
Email: debra.jezouit@bakerbotts.com

*Attorneys for Movant-Intervenors Hawaiian Electric Company, Inc.; Hawai'i Electric Light Company, Inc.; and Maui Electric Company, Limited*

# CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(a)(7)(C) and 9th Cir. R. 27-1, I certify that:

This motion complies with the word limitation of Fed. R. App. P. 27(d)(2)(A) because it contains 4,402 words, excluding the parts of the motion exempted by Fed. R. App. P. 32(f). This motion also complies with the page limitation of 9th Cir. R. 27-1(1)(d) because it does not exceed 20 pages.

This motion complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this motion has been prepared in a proportionately spaced typeface using Microsoft Word 2019 in Times New Roman 14-point font.

DATED: August 21, 2026.

*/s/ Allison Watkins Mallick*

Allison Watkins Mallick
BAKER BOTTS L.L.P.
101 California Street, Suite 3200
San Francisco, CA 94111
Telephone: (415) 291-6269
Email: allison.mallick@bakerbotts.com

*Attorney for Movant-Intervenors*
*Hawaiian Electric Company, Inc.;*
*Hawai'i Electric Light Company, Inc.;*
*and Maui Electric Company, Limited*

## CERTIFICATE OF CONFERENCE

I hereby certify that on August 17, 2026, I conferred with counsel for Petitioner and Respondent regarding this motion and was informed on August 18, 2026, that Petitioner does not oppose this motion and on August 20, 2026, that Respondent reserves its position on this motion.

DATED: August 21, 2026.

*/s/ Allison Watkins Mallick*

Allison Watkins Mallick
BAKER BOTTS L.L.P.
101 California Street, Suite 3200
San Francisco, CA 94111
Telephone: (415) 291-6269
Email: allison.mallick@bakerbotts.com

*Attorney for Movant-Intervenors Hawaiian Electric Company, Inc.; Hawai'i Electric Light Company, Inc.; and Maui Electric Company, Limited*

**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE NINTH CIRCUIT**

| | |
|---|---|
| STATE OF HAWAI‘I,<br>Petitioner,<br><br>v.<br><br>UNITED STATES ENVIRONMENTAL PROTECTION AGENCY,<br>Respondent. | No. 26-4688 |

**CORPORATE DISCLOSURE STATEMENT**

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure and 9th Cir. R., Movant-Intervenors Hawaiian Electric Company, Inc.; Hawai‘i Electric Light Company, Inc.; and Maui Electric Company, Limited (collectively, “Hawaiian Electric”) submit the following required Disclosure Statement:

Hawai‘i Electric Light Company, Inc. is a domestic corporation that is registered to do business in the State of Hawai‘i. Hawai‘i Electric Light Company, Inc. is wholly owned by Hawaiian Electric Company, Inc.

Maui Electric Company, Limited is a domestic corporation that is registered to do business in the State of Hawai‘i. Maui Electric Company, Limited is wholly owned by Hawaiian Electric Company, Inc.

Hawaiian Electric Company, Inc. is a domestic corporation that is registered to do business in the State of Hawai‘i. Hawaiian Electric Company, Inc. is wholly owned by Hawaiian Electric Industries, Inc.

Hawaiian Electric Industries, Inc. (“HEI”) is a domestic corporation that is registered to do business in the State of Hawai‘i. HEI is a publicly-traded company. To the best of HEI’s knowledge, no publicly held corporation directly owns 10% or more of HEI’s stock.[4]

DATED: August 21, 2026

*/s/ Allison Watkins Mallick*

Allison Watkins Mallick
BAKER BOTTS L.L.P.
101 California Street, Suite 3200
San Francisco, CA 94111
Telephone: (415) 291-6269
Email: allison.mallick@bakerbotts.com

*Attorney for Movant-Intervenors
Hawaiian Electric Company, Inc.;
Hawai‘i Electric Light Company, Inc.;
and Maui Electric Company, Limited*

[4] Affiliates of publicly-traded corporations, when taken in the aggregate, could give a publicly-traded corporation an indirect interest in 10% or more of HEI’s stock. On information and belief, the only group that meets this description are entities affiliated with Blackrock, Inc.

## CERTIFICATE OF SERVICE

I hereby certify that on August 21, 2026, I electronically filed the foregoing using the Court's CM/ECF system which will send notification of such filing to the parties.

*/s/ Allison Watkins Mallick*

Allison Watkins Mallick
BAKER BOTTS L.L.P.
101 California Street, Suite 3200
San Francisco, CA 94111
Telephone: (415) 291-6269
Email: allison.mallick@bakerbotts.com

*Attorney for Movant-Intervenors Hawaiian Electric Company, Inc.; Hawai'i Electric Light Company, Inc.; and Maui Electric Company, Limited*